IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BENNIE DAVIS BUTLER, JR and )
JANE BURNHAM BUTLER )
                      )
      Plaintiffs, )
                      )
v. )       Civil Action No.
                      )
NATIONWIDE MUTUAL FIRE )
INSURANCE COMPANY, )
                      )
      Defendant. )

## COMPLAINT FOR DAMAGES

Defendant Nationwide Mutual Fire Insurance Company issued a homeowner's policy of insurance to Plaintiffs Bennie Davis Butler, Jr. and Jane Burnham Butler to provide insurance coverage for their home. On November 26, 2020, the Butlers lost their home in a fire. The Butlers reported that loss to Nationwide. Nationwide, however, failed to cover the loss, and in doing so forced the Butlers to incur significant additional injuries and damages. Nationwide's delays, failure to provide coverage, and negligent handling of the Butlers' claim are unjustifiable, egregious, callous, and constitute bad faith. Nationwide's conduct also warrants the imposition of punitive damages and award of attorneys' fees.

1

## PARTIES AND JURISDICTION

1.

Nationwide is an insurance company organized and existing under the laws of the state of Ohio and is authorized and qualified to transact business in the state of Georgia.

2.

Nationwide's principal place of business is in the State of Ohio.

3.

Nationwide may be served with process by serving a second original of the Summons and Complaint to Corporation Service Company as its registered agent for service of process at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

4.

The Butlers are citizens of Georgia and residents of Fulton County.

5.

The amount in controversy for this matter exceeds $75,000 not including interest and costs of court as the Butlers' damages caused by Nationwide's failure to provide coverage, bad faith, and negligence, exceeds $1,000,000.

6.

Nationwide is subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1332.

7.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as the events or omissions giving rise to the Butlers' claims arises from Nationwide's failure to provide insurance coverage for real property located at 5535 Bannergate Drive, Alpharetta, Fulton County, Georgia 30022 (the "Property").

## FACTUAL BACKGROUND RELEVANT TO ALL CLAIMS

### The Policy and the November 26, 2020 Fire

8.

Nationwide issued Homeowners Policy No. 77 11 HR 044924 to the Butlers for the policy period of May 12, 2020 to May 12, 2021 covering the Butlers' home located at 5535 Bannergate Drive, Alpharetta, Georgia 30022.

9.

The Butlers paid all premiums due to Nationwide for the Policy.

10.

The Policy's limits of liability under Coverage Part A ("Dwelling") are $507,800. These limits of liability are increased by endorsement to 150% of the

Coverage Part A limits (or an additional $253,900) pursuant to Endorsement H0306 07 16.

11.

The Policy also provides "Other Structures" limits of liability of $50,780, "Personal Property" limits of liability of $380,851, and other coverages, such as $50,780 for code and ordinance requirements, that might be available to the Butlers.

12.

The Policy provides, *inter alia*, that Nationwide will insure against direct physical loss to the Property and will pay the Butlers the cost to repair or replace the damage to the Property or the "actual cash value" of the Property.

13.

On November 26, 2020, while the Policy was in full force and effect, the Property was damaged by fire.

14.

The Butlers properly and timely notified Nationwide of the fire and loss of the Property.

15.

On November 26, 2000 at 4:00 a.m. EDT, Nationwide acknowledged and confirmed receipt of the Butlers' claim. Nationwide assigned a claim number, 308735-GL, and a claims handler, Lee Burkett, CPCU.

**<u>Nationwide's Bad Faith and Negligent Handling of the Claim</u>**

16.

On November 30, 2020, Mr. Butler notified Nationwide that the Property and its contents should be declared "a complete loss."

17.

In the same November 30, 2020, correspondence, Mr. Butler notified Nationwide that he was undergoing treatment for pancreatic cancer and that time was of the essence for repairing the home.

18.

The November 30, 2020, correspondence was sent to Nationwide's Large Loss Senior Claims Representative, Trey Lindstrom, who the Butlers had been told would be adjusting their claim.

19.

In the transmittal email for the November 30, 2020, correspondence, Mr. Butler asked if Nationwide had counsel for the claim so that Mr. Butler, who is an

attorney himself, could communicate directly with Nationwide's attorney(s). Mr. Lindstrom responded that Nationwide did not have outside counsel.

20.

On December 2, 2020, the Butlers were provided with a report from Meridian Restoration, which had been hired by Nationwide, that provided a visual representation of the damage to the Butlers' home. The report demonstrated the scope and devastating nature that the November 26, 2020, fire had on the Property.

21.

On December 5, 2020, Mr. Butler submitted a Sworn Statement in Proof of Loss in which he stated, "We believe that the losses could exceed $1,000,000 – we are trying to salvage contents." When asked the amount of depreciation for the Property, Mr. Butler responded, "0. The house was an appreciating asset."

22.

On the December 5, 2020 Sworn Statement in Proof of Loss, Mr. Butler also stated, "We have asked Lewis Reeves, a builder in the area for the past 44 yrs to help us with the loss relating to the structure. He may be asked to re-build our house."

23.

The December 5, 2020 Sworn Statement in Proof of Loss form also asked Mr. Butler to provide an "Amount Claimed." Mr. Butler provided "$1,000,000 (estimate)."

24.

Beginning in December 2020, Nationwide began processing payments under the various coverage parts of the policy (i.e., rental payments for the Butler's temporary home under Coverage Part D – Loss of Use). However, Nationwide did not initiate or discuss any payment under Coverage Part A, B, or the Dwelling Replacement Cost endorsement.

25.

Nationwide's Large Loss Senior Claims Representative, Trey Lindstrom, promised to provide his "adjuster's report" on the damage to the Property in December 2020. Mr. Lindstrom, who took a multiple-week vacation in December, failed to deliver the adjuster's report.

26.

During December 2020, the only work done at the Property was work performed by third-party contractors who began removing personal belongings and some non-salvageable items.

27.

On January 8, 2021, Mr. Butler called Mr. Lindstrom to ask for a status update. During the call, Mr. Butler impressed upon Mr. Lindstrom the need for the claim to be timely processed as he was sick, undergoing various medical treatments, and wanted to have his home repaired or rebuilt so that he could recover at home.

28.

On January 9, 2021, Mr. Lindstrom emailed Mrs. Butler stating that he had "completed the estimate [for the loss] but I want to walk [the Property] one more time before sending. I will be doing so Monday [January 11, 2021] and I will e-mail it as soon as I make any needed revisions."

29.

Mr. Lindstrom did not deliver the adjuster's report until January 21, 2021, and he did not deliver the report until after the Butlers had to request it *again* from him multiple times. Mr. Lindstrom's transmittal email misrepresented that he was sending the report "again."

30.

On January 28, 2021, Kevin O'Brien, a professional industrial hygienist with Culpepper Group, Inc., delivered a mold report to the Butlers and to Nationwide.

Mr. O'Brien told the Butlers that the mold was the worst he had ever seen. Nationwide did nothing in response to the report.

31.

On February 4, 2021, Mr. Butler emailed Mr. Lindstrom and explained, "[T]he delays are having serious consequences for me. I am afraid that I now will be in the hospital just after cancer surgery when important decisions are being made. My legal clients expect me to act quickly and efficiently. I think it is fair to require the same from home experts."

32.

On February 7, 2021, Mr. Butler emailed Mr. Lindstrom requesting an update, requesting weekly updates, and imploring that Mr. Lindstrom timely process the claim. Mr. Lindstrom responded within three minutes stating, "I will give you an update tomorrow when I return to the office."

33.

On February 11, 2021, Mr. Butler, Mr. Lindstrom, and Mr. Lewis Reeves met at the Property. Mr. Butler and Mr. Lewis proposed that Hibernia, a demolition and mold remediation company, be retained to address the mold, fire, and water damage. Mr. Lindstrom approved Hibernia's work on February 12, 2021, and Hibernia began work the following week.

34.

On February 21, 2021, Hibernia's representatives and contractors reported that the structural damage was more extensive than originally believed. In response, the Butlers retained a structural engineer to perform a field evaluation of the structural integrity of the Property. The structural engineer's recommendations were provided to Nationwide in a report dated February 26, 2021. Nationwide did nothing in response to the structural engineer's report.

35.

On March 1, 2021, Mr. Lindstrom informed the Butlers that Nationwide was sending him to Houston, Texas, until March 29, 2021 for "catastrophe duty." Mr. Lindstrom committed to "checking and responding to [his] e-mails each evening." Mr. Lindstrom did not identify a replacement adjuster or claims handler.

36.

On March 3, 2021, Mr. Butler again sent Mr. Lindstrom the February 26 structural engineer report and asked that Mr. Lindstrom work with Mr. Lewis Reeves to determine if the home should be demolished. Mr. Lindstrom responded that Mr. Reeves could secure the permit and that demolition work would be paid. Mr. Lindstrom did not, however, explain the scope or extent of any approved demolition or rebuild.

37.

Following the lack of response and action from Mr. Lindstrom, the Butlers and Mr. Lewis met with Mr. Lindstrom's supervisor, Travis Lindsey, at the Property on March 16, 2021. The Butlers expressed to Mr. Lindsey their frustrations with Nationwide's lack of action and expressed their need to have the Property rebuilt.

38.

Nationwide took no further action regarding the Butlers' claim during the month of March 2021.

39.

The Butlers, having obtained no assistance from Nationwide, directed Mr. Lewis to obtain bids from subcontractors in order to price the demolition and reconstruction of the home. Mr. Lewis's proposal, which included replacement of the Property's foundation, totaled $798,971.50.

40.

The Butlers delivered Mr. Lewis's proposal to Nationwide on April 5, 2021.

41.

The Butlers and Mr. Lewis met with Mr. Lindsey on April 14, 2021. Mr. Lindsey told the Butlers that he did not believe that the Property needed to be

completely demolished and rebuilt. Mr. Lindsey did not provide any additional support, engineering documentation, testing results, estimates, or bids, to support this claim.

42.

At the April 14, 2021 meeting, Mr. Lindsey misrepresented to the Butlers the available limits of coverage. He told the Butlers that the Policy carried limits of $507,000 for the dwelling and $50,000 for ordinance and code requirements. Mr. Lindsey omitted the Policy's Endorsement, H 03 06 0716, which provides 150% of the Policy's Coverage A limits for a dwelling replacement.

43.

Nationwide has taken the position that the foundation of the Property does not need to be replaced.

44.

On April 15, 2021, Hibernia inspected the Property again and stated that the costs of preserving the foundation would exceed the costs of removing the foundation and starting over.

45.

Nonetheless, in an effort to get any action, approval, payment, or even response from Nationwide, the Butlers provided Nationwide's employees (Mr.

Lindstrom and Mr. Lindsey) with an estimate on April 28, 2021, from Mr. Lewis showing that that the home could be rebuilt—without replacing the foundation—for $735,981.24 (i.e., within the Policy's limits).

### 46.

Nationwide did not respond to, investigate, or seek any additional information concerning the April 28, 2021, estimate.

### 47.

On April 30, 2021, the undersigned counsel for the Butlers emailed and sent via certified mail a demand to Nationwide for the full policy limits as well as bad faith damages and attorneys fees.

### 48.

The demand was sent at 5:20 p.m. EDT on April 30, 2021.

### 49.

At 5:55 p.m. EDT on April 30, 2021, Mr. Lindstrom emailed the Butlers tendering what Nationwide considered to be the "actual cash value" of the Property: $483,734.46. Mr. Lindstrom also provided, for the first time, an engineer's evaluation dated April 23, 2021.

50.

The Policy defines "actual cash value" as, "the amount it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence."

51.

To support its "actual cash value," Nationwide provided the Butlers with an undated estimate containing various materials and labor pricing. The undated estimate, however, is woefully inadequate and inaccurate.

52.

For example, Nationwide's undated estimate provides a price per unit of $16.50 for 2" x 4" x 20' for Better Douglas Fir lumber. However, the actual per unit price is currently more than $28.00/unit.

53.

Lumber prices have increased dramatically in the past year—especially so in the past several months. The price of 1000 board feet of lumber on November 26, 2020, was approximately $607.00. The price of 1000 board feet of lumber on April 30, 2020—when Nationwide offered "actual cash value" for the Property—was approximately $758.00.

54.

This change in price reflects a nearly 25% increase in lumber costs alone from the time of the fire that destroyed the Butlers' home until the day that Nationwide provided its inadequate and inaccurate estimate.

55.

Nationwide knew, or should have known, of the market changes concerning material costs that would affect the costs to rebuild the Property.

56.

Nationwide has not—and cannot—identify a single contractor that would rebuild the Butlers' home with material of like kind and quality as it was before the loss at the cost Nationwide provided.

57.

Nationwide's delays and avoidance have caused the Butlers to be unable to rebuild their home in a timely manner, and as a result, they must now suffer the consequences of a market that will impose greater costs upon them than had Nationwide timely adjusted the claim so that the home could have been rebuilt in a timely manner.

58.

Nationwide's conduct, by and through its agents, officers, and employees, and specifically Mr. Lindstrom and Mr. Lindsey, has been egregious, intentional, reckless, extreme, and outrageous.

59.

Nationwide's conduct evidences bad faith such that Nationwide is liable to the Butlers for the maximum amount of bad faith damages allowed under O.C.G.A. § 33-4-6 and all applicable Georgia law.

## COUNT I – BAD FAITH

60.

Plaintiffs incorporate by reference each and every prior and subsequent allegation as though fully set forth herein.

61.

The Policy provides coverage to the Butlers for the loss of their home.

62.

At no point was coverage for the loss disputed.

63.

On November 30, 2020, the Butlers submitted that the loss should be considered a complete loss.

64.

On December 5, 2020, Mr. Butler informed Nationwide that the whole value of the loss and damage "could exceed $1,000,000."

65.

From November 30, 2020 through the time of filing of this Complaint for Damages, Nationwide has unreasonably delayed and avoided paying the Butlers' claim.

66.

Nationwide and its agents, employees, and representatives had sufficient information to determine the nature and extent of loss. Nonetheless, Nationwide engaged in frivolous delay and avoidance tactics and otherwise failed to exercise due diligence in fulfilling their obligations to their insureds to ensure that the claim was timely and properly paid.

67.

Nationwide had no good cause or justification for delaying and avoiding paying the Butlers' claim.

68.

As a result of Nationwide's bad faith, and pursuant to O.C.G.A. § 33-4-6, Nationwide is liable to the Butlers for up to fifty percent of its liability for the loss in addition to the sums it owes the Butlers for coverage under the Policy.

69.

As a result of Nationwide's bad faith, and pursuant to O.C.G.A. § 33-4-6, Nationwide is liable for all of the Butlers' reasonable attorneys' fees in the prosecution of this matter.

70.

In accordance with O.C.G.A. § 33-4-6(b), the Butlers will mail to the Commissioner of Insurance a copy of their demand and this Complaint for Damages via first-class mail within twenty days of filing.

## COUNT II – NEGLIGENCE

71.

Plaintiffs incorporate by reference each and every prior and subsequent allegation as though fully set forth herein.

72.

Nationwide had a duty to timely and appropriately adjust and pay the Butlers' claim. This duty included keeping the Butlers informed about the status of

18

their claim, requesting any additional information if needed, inspecting and testing the property to determine the extent and nature of the loss, and ultimately timely paying the claim.

73.

Nationwide breached its duty to the Butlers by, *inter alia*, failing to process the Butlers' claims in a timely manner, failing to pay for the Butlers' loss as covered by the Policy, failing to keep the Butlers' apprised of developments, and failing to investigate and adjust the claim.

74.

The Butlers' damages that are the direct and proximate cause of Nationwide's negligence include the mental anguish and frustration experienced by the Butlers as well as increased construction and material costs now necessary to rebuild the home.

75.

Nationwide is liable for the losses and injuries suffered by the Butlers as a result of its tortious acts and omissions.

## COUNT III – NEGLIGENCE OF MESSRS. LINDSTROM AND LINDSEY

76.

Plaintiffs incorporate by reference each and every prior and subsequent allegation as though fully set forth herein.

77.

At all times relevant to the allegations of this Complaint, Mr. Trey Lindstrom and Mr. Travis Lindsey were employees and agents of Nationwide.

78.

At all times relevant to the allegations of this Complaint, Mr. Lindstrom and Mr. Lindsey were acting within the course and scope of their employment with Nationwide.

79.

Mr. Lindstrom and Mr. Lindsey had a duty to timely and appropriately adjust and pay the Butlers' claim. This duty included keeping the Butlers informed on the status of their claim, requesting any additional information if needed, inspecting and testing the property to determine the extent and nature of the loss, and ultimately timely paying the claim.

80.

Mr. Lindstrom and Mr. Lindsey breached their duty to the Butlers by, *inter alia*, failing to process the Butlers' claims in a timely manner, failing to pay for the Butlers' loss as covered by the Policy, failing to keep the Butlers' apprised of developments, and failing to investigate and adjust the claim.

81.

The Butlers' damages that are the direct and proximate cause of Mr. Lindstrom's and Mr. Lindsey's negligence include the mental anguish and frustration experienced by the Butlers as well as increased construction and material costs now necessary to rebuild the home.

82.

Nation is liable under the doctrine of *respondeat superior* for the tortious acts and omissions of its agents, employees, members, representatives, servants, or contractors.

## COUNT IV – BREACH OF CONTRACT

83.

Plaintiffs incorporate by reference each and every prior and subsequent allegation as though fully set forth herein.

84.

Nationwide has breached the insurance contract and Policy by, among other things, failing to pay the Butlers' entire loss as covered by the Policy.

85.

Nationwide is liable to the Butlers for loss and damage to their home or dwelling resulting from the fire.

86.

Nationwide is liable to the Butlers for all amounts due and owing under the Policy and all other damages resulting from Nationwide's breach of contract.

## COUNT V – PUNITIVE DAMAGES

87.

Plaintiffs incorporate by reference each and every prior and subsequent allegation as though full set forth herein.

88.

The Butlers informed Nationwide that Mr. Butler was undergoing treatment for pancreatic treatment and that time was of the essence for processing their claim as it was of upmost importance to the Butlers that the claims handling process be handled quickly and efficiently so that Mr. Butler could focus on his health and eventually recover from various medical procedures at home.

89.

Nationwide ignored the Butlers' pleas and inexcusably delayed the processing of the Butlers' claims.

90.

Nationwide's handling of the Butlers' claims evidences an entire want of care sufficient to raise the presumption of conscious indifference to the consequences.

91.

Nationwide's misconduct and gross negligence is so aggravating that it authorizes, warrants, and demands the imposition of punitive damages pursuant to O.C.G.A. § 51-12-5.1.

## COUNT VI – ATTORNEYS' FEES AND EXPENSES OF LITIGATION

92.

Plaintiffs incorporate by reference each and every prior and subsequent allegation as though fully set forth herein.

93.

As evidenced by the facts as set forth above, Defendants have acted in bad faith, have been stubbornly litigious, and have caused the Butlers unnecessary

trouble and expense, thereby entitling them to recover their attorneys' fees and litigation expenses pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

94.

Plaintiffs incorporate by reference each and every prior and subsequent allegation as though full set forth herein.

95.

The damages claimed by the Butlers were proximately caused by Nationwide's breach of the Policy and the tortious acts and omissions of Nationwide and Nationwide's agents, employees, and representatives.

WHEREFORE, the Butlers pray for the following relief:

(a) That summons be issued to Nationwide, requiring them to appear as provided by law to answer this Complaint for Damages;

(b) That service be had on Nationwide as provided by law;

(c) That the Butlers have and recover all compensatory and special damages for all of their losses as set forth above;

(d) That the Butlers have judgment against Nationwide for Counts I through VI of this Complaint for Damages;

(e) That this Court award punitive damages against Nationwide;

24

(f) That this Court award the Butlers all expenses of litigation, including

attorneys' fees; and

(g) That the Butlers have such other and further relief as the Court deems

just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs request a trial by jury for all issues so triable.

This 21st day of May, 2021.

**CHEELEY LAW GROUP, LLC**

*/s/ Robert D. Cheeley*
Robert D. Cheeley
Georgia Bar No. 122727
*Attorney for Plaintiffs*

Cheeley Law Group, LLC
2500 Old Milton Parkway
Suite 200
Alpharetta, GA 30009
Telephone: 770-814-7001
Facsimile: 678-559-0273
bob@cheeleylawgroup.com