## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Bennie Davis Butler, Jr. and Jane
Burnham Butler,

               Plaintiffs,

v.                               Case No. 1:21-cv-2138-MLB

Nationwide Mutual Fire Insurance
Company,

               Defendant.

_____/

## **OPINION & ORDER**

Plaintiffs Bennie Davis Butler, Jr. and Jane Burnham Butler sued Defendant Nationwide Mutual Fire Insurance Company for bad faith, negligence, breach of contract, punitive damages, and attorneys' fees. (Dkt. 1.) Defendant moves to dismiss all but the breach of contract claim. (Dkt. 12.) The Court grants that motion. The Butlers move to amend their complaint. (Dkt. 22.) The Court denies that motion other than—as discussed below—for one limited purpose surrounding a March 5, 2021 email.

## I.    Background

In November 26, 2020, the Butlers' home was damaged in a fire. (Dkt. 1 ¶ 13.)  At the time, it was covered by an insurance policy with Defendant.  (*Id.* ¶ 8.)  The policy caps Defendant's liability to $507,800, but an endorsement adds another $253,900 in coverage.  (*Id.* ¶ 10.)  The policy also covers damages to other structures of up to $50,780 and damages to personal property of up to $380,851.  (*Id.* ¶ 11.)  It has some other coverages that also might be available to the Butlers.  (*Id.*)  The policy states Defendants will insure against direct physical loss to the property and will pay the Butlers the cost to repair or replace the damage to the property or the "actual cash value" of the property.  (*Id.* ¶ 12.)

The Butlers notified Defendant of the fire and their resulting loss. (*Id.* ¶ 14.)  Defendant immediately acknowledged receipt of the claim. (*Id.* ¶ 15.)  On November 30, 2020—just four days after the fire—Mr. Butler sent Defendant a letter saying that, after speaking with a contractor experienced in fire restoration, Mr. Butler believed the house and its contents should be declared "a complete loss."  (*Id.* ¶ 16.)  He also explained he was undergoing treatment for pancreatic cancer and needed the insurance process to go as smoothly and quickly as possible.  (*Id.*

¶ 17.)  Mr. Butler sent his letter to Trey Lindstrom, Defendant's Large Loss Senior Claims Representative, who Defendant said would be responsible for adjusting the Butlers' claim.  (*Id.* ¶ 18.)  In a transmittal email, Mr. Butler asked if Defendant had counsel so he could communicate directly with the attorney.  (*Id.* ¶ 19.)  Mr. Lindstrom said Defendant did not.  (*Id.*)

On December 2, 2020, Meridian Restoration (a company hired by Defendant) provided the Butlers a report outlining the devastating nature of the fire.  (*Id.* ¶ 20.)  Three days later, Mr. Butler submitted a sworn statement in proof of loss, saying "We believe that the losses could exceed $1,000,000 – we are trying to salvage contents."  (*Id.* ¶ 21.)  Mr. Butler also stated, "We have asked Lewis Reeves, a builder in the area for the past 44 [years] to help us with the loss relating to the structure. He may be asked to re-build our house."  (*Id.* ¶ 22.)  Mr. Butler also provided "$1,000,000 (estimate)" as the "Amount Claimed."  (*Id.* ¶ 23.)

In December 2020, Defendant began processing claims for the Butlers' rental payments.  (*Id.* ¶ 24.)  Defendant did not, however, initiate or discuss any payment for the fire damages and resulting loss.  (*Id.*)  Mr.

Lindstrom promised to provide an adjuster's report in December 2020 but did not.  (*Id.* ¶ 25.)  No repair work began that month.  (*Id.*)

On January 8, 2021, Mr. Butler called Mr. Lindstrom to ask for a status update.  He also again stressed the need for speed as he was sick and wanted to recover at home.  (*Id.* ¶ 27.)  On January 9, 2021, Mr. Lindstrom emailed Mrs. Butler saying he had completed his estimate of loss but wanted to inspect the property one more time before sending it.  (*Id.* ¶ 28.)  He said he would do that on January 11, 2021.  (*Id.*)  After several more requests by the Butlers, Mr. Lindstrom delivered the report on January 21, 2021.  (*Id.* ¶ 29.)

A week later, Kevin O'Brien, an industrial hygienist, delivered a mold report to the Butlers and Defendant, saying mold in the house was the worst he had ever seen.  (*Id.* ¶ 30.)  Defendant did not respond.  (*Id.*)  On February 4, 2021, Mr. Butler emailed Mr. Lindstrom and explained, "[T]he delays are having serious consequences for me. I am afraid that I now will be in the hospital just after cancer surgery when important decisions are being made."  (*Id.* ¶ 31.)  Mr. Butler emailed Mr. Lindstrom again three days later, requesting an update, requesting weekly updates, and imploring Mr. Lindstrom to work more quickly.  (*Id.* ¶ 32.)  Mr.

Lindstrom responded saying, "I will give you an update tomorrow when I return to the office." (*Id.*)  A couple of days later, Mr. Butler, Mr. Lindstrom, and Mr. Reeves (the builder) met at the property. (*Id.* ¶ 33.) Mr. Butler and Mr. Reeves proposed that Hibernia, a demolition and mold remediation company, be retained to address the mold, fire, and water damage. (*Id.*) Mr. Lindstrom approved Hibernia's work. (*Id.*) On February 21, 2021, Hibernia reported that the structural damage was more extensive than originally believed. (*Id.* ¶ 34.)  The Butlers then retained a structural engineer to perform a field evaluation of the property. (*Id.*) The structural engineer provided Defendant a report and recommendation on or about February 26, 2021. (*Id.*)

On March 1, 2021, Mr. Lindstrom told the Butlers he was being sent to Texas until late March on a company project but was committed to "checking and responding to [his] e-mails each evening." (*Id.* ¶ 35.) Two days later, Mr. Butler sent Mr. Lindstrom the structural engineer's report, asking Mr. Lindstrom to work with Mr. Reeves to determine whether the house should be demolished. (*Id.* ¶ 36.) Mr. Lindstrom said Mr. Reeves could secure the demolition permit and work would be

covered.  (*Id.*)  He provided no details about the exact scope of work he had approved.  (*Id.*)

Later that month, the Butlers and Mr. Reeves met with Mr. Lindstrom's supervisor, Travis Lindsey, at the property.  (*Id.* ¶ 37.)  The Butlers expressed their frustration with Defendant's lack of action and said they believed the entire property needed to be rebuilt.  (*Id.*)  When Defendant took no further action that month, the Butlers directed Mr. Reeves to obtain bids from subcontractors for demolition and reconstruction.  (*Id.* ¶¶ 38, 39.)  Mr. Reeves' proposal, which included replacement of foundation, totaled $798,971.50.  (*Id.*)

In early April 2021, the Butlers sent Defendant that proposal.  (*Id.* ¶ 40.)  During a meeting on April 14, 2021, Mr. Lindsey told the Butlers he did not believe the property needed to be completely demolished and rebuilt.  (*Id.* ¶ 41.)  He also told the Butlers the policy carried limits of $507,000 for the dwelling and $50,000 for ordinance and code requirements, failing to mention the endorsement that added $353,900 in coverage  (*Id.* ¶ 42.)

The next day, Hibernia inspected the property and concluded the cost of repairing and saving the foundation would exceed the cost of

demolishing it and starting over.  (*Id.* ¶ 44.)  Nonetheless, the Butlers provided Mr. Lindstrom and Mr. Lindsey a revised estimate, saying the house could be rebuilt (without foundation replacement) for $735,981.24. (*Id.* ¶ 45.)  On April 30, 2021, the Butlers' attorney sent Defendant a demand for the full policy limits as well as a claim for bad faith damages and attorneys' fees.  (*Id.* ¶ 47.)  Later that day, Mr. Lindstrom emailed the Butlers tendering what Defendant considered the "actual cash value" of the property—$483,734.46.[1]  (*Id.* ¶ 49.)  Mr. Lindstrom also provided an engineer's evaluation dated April 23, 2021 and an undated estimate containing materials and labor pricing.  (*Id.* ¶ 49, 51.)

On May 21, 2021, the Butlers filed suit against Defendant alleging (1) bad faith, (2) negligence, (3) negligence of Messrs. Lindstrom and Lindsey, (4) breach of contract, (5) punitive damages, and (6) attorneys' fees and expenses of litigation.  (*Id.* ¶¶ 60–93.)  On August 27, 2021, Defendant moved to dismiss all but the breach of contract claim.  (Dkt.

---

[1] Actual cash value is defined as "the amount it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence."  (Dkt. 1 ¶ 50.)

12.)  On February 8, 2022, the Butlers moved for leave to file an amended complaint which adds facts and omits the jury demand.  (Dkts. 22; 22-1.)

## II.   Motion to Dismiss

### A.   Legal Standard

A court may dismiss a pleading for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)).  Even so, a complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  Put another way, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).   This so-called "plausibility standard" is not a probability requirement.  *Id.*  Even if a plaintiff will probably not recover, a complaint may still survive a motion to dismiss for failure to state a claim, and a court reviewing such a motion should bear in mind that it is testing the sufficiency of the complaint, not the merits of the case.  *Twombly*, 550 U.S. at 556.

## B.   Discussion

### 1.   Attached Documents

Both Plaintiffs and Defendant attached documents that were not included in the complaint to their pleadings.  Courts generally "do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss," *Pucci v. Carnival Corp.*, 146 F. Supp. 3d 1281, 1292 (S.D. Fla. 2015) (citing *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (per curiam)), and a "district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint," *Pepper v. Prime Rate Premium Fin. Corp.*, No. 1:17-cv-03871, 2019 WL 6272874, at *3 (N.D. Ga. Nov. 25, 2019) (quoting *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005)).   But "an

exception exists when [1] a plaintiff refers to a document in its complaint, [2] the document is central to [his] claim, [3] its contents are not in dispute, and [4] the defendant attaches the document to its motion to dismiss." *Peck v. Spirit Logistics Network, Inc.*, No. 1:20-cv-02041, 2020 WL 10485913, at *2 (N.D. Ga. Dec. 18, 2020) (alterations in original) (citation and internal marks omitted); *see also Pepper*, 2019 WL 6272874, at *3 (citation omitted) (explaining that courts may "consider documents referenced in the complaint, even if they are not physically attached, if the documents are central to the complaint and no party questions their authenticity"). "[A] document is central to a complaint when it is a necessary part of [a plaintiff's] effort to make out a claim." *GoPlus Corp. v. Crown Equip. Corp.*, No. 4:20-cv-34, 2021 WL 1233517, at *4 (S.D. Ga. Mar. 31, 2021) (second alteration in original) (citation and internal marks omitted).

Defendant attached the Butlers' April 30, 2021 demand letter to its motion to dismiss. (Dkt. 12-1.) There are a couple of things to note about it. First, this letter is referenced in the complaint. (Dkt. 1 ¶ 47.) Second, this letter is central to the Butlers' claims, specifically their bad faith claim. *See Akbari v. Auto-Owners Ins. Co.*, No. 1:18-CV-4636, 2019 WL

5586567, at *3 n.37 (N.D. Ga. Jan. 8, 2019) ("Compliance with the procedural requirements of § 33-4-6 is central to [the Butlers'] claim."). Third, the Butlers do not dispute the letter's authenticity. (*See generally* Dkt. 17.) The Court thus considers the April 30, 2021 letter.

In responding to Defendant's motion to dismiss, the Butlers attached (1) their November 30, 2020 letter, (2) Defendant's confirmation email that it had received the Butlers' initial November 26, 2020 claim, (3) emails between the Butlers, Mr. Lindstrom, Mr. Reeves, and others between March 1, 2021 and April 16, 2021, and (4) the Butlers' sworn statement in proof of loss. (Dkts. 17-1; 17-2; 17-3; 17-4.) None of these items were attached to Defendant's motion to dismiss, taking all of them outside the scope of what a court may consider beyond the complaint. Putting that aside, the November 30, 2020 letter, Defendant's confirmation email, and the Butlers' sworn statement in proof of loss are referenced in the Butlers' complaint and central to the Butlers' claims. (Dkt. 1 ¶¶ 15–16, 21.) But Defendant disputes the authenticity of the Butlers' sworn statement in proof of loss. (Dkt. 21 at 2 n.1.) The Court thus will not consider it. *See Day*, 400 F.3d at 1276 ("'[U]ndisputed' means that the authenticity of the document is not challenged."). It will,

however, consider the November 30, 2020 letter and Defendant's confirmation email.

As to the emails, the Butlers characterize them as Defendant's "email about outside counsel for the claim." (Dkt. 17 at 3.) The attachment actually includes three separate email chains. (Dkt. 17-3.) The first email chain—dated March 5, 2020—concludes with Mr. Butler telling Mr. Lindstrom, "Sorry, but I have [to] escalate this. I think you need to connect me with your legal counsel. I am not permitted to speak with you anymore given that we are headed to litigation now." (*Id.* at 1.) First, this email is *vaguely* referenced in the Butlers' complaint. Specifically, the Butlers allege "[i]n the transmittal email for the November 30, 2020, correspondence, Mr. Butler asked if Nationwide had counsel for the claim so that Mr. Butler . . . could communicate directly with Nationwide's attorney(s). Mr. Lindstrom responded that Nationwide did not have outside counsel." (Dkt. 1 ¶ 19.) Second, this letter is central to the Butlers' claims. *See Akbari*, 2019 WL 5586567, at *3 n.37 ("Compliance with the procedural requirements of § 33-4-6 is central to [the Butlers'] claim."). Third, Defendant does not dispute the letter's authenticity. (*See generally* Dkt. 21.) The Court will consider this

email.  The other emails may satisfy the requirements, but are largely irrelevant to any issue before the Court and would not change the Court's conclusion whether or not considered.

### 2.  Bad Faith

The Butlers base their bad faith claim on Mr. Butler's November 30, 2020 letter and his December 5, 2020 sworn statement in proof of loss. The Butlers say that, in the November 30 letter, they told Defendant the house should be considered a complete loss and on December 5, 2020, they informed Defendant that the whole value of the loss and damage "could exceed $1,000,000."   (Dkt. 1  ¶¶  63–64.)   They then allege Defendant is liable under Georgia's bad faith statute because Defendant had sufficient information to determine the nature and extent of the loss since November 30, 2020, but unreasonably delayed and avoided paying the Butlers' claim without good cause or justification.  (*Id.* ¶¶ 65-67.)

Defendant argues the November 30 letter and December 5 proof of law do not meet the requirements for a demand under Georgia law. Defendant says the only demand the Butlers ever made was their April 30, 2021 letter.  (Dkt. 12 at 4–5.)  Defendant further argues any bad faith claim based on that letter fails as a matter of law because the Butlers did

not leave the demand open for 60 days before filing suit and the amount demanded was not immediately payable. (*Id.*)

The Court agrees with Defendant. Even accepting Plaintiff's factual allegations as true, construing all reasonable inferences in their favor, and considering the attached documents as discussed above, the Butlers have not stated a plausible claim for bad faith failure to settle under Georgia law.

To prevail on such a claim, an insured must show: "(1) that a demand for payment was made against the insurer at least sixty days prior to filing suit, and (2) that the insurer's failure to pay was motivated by bad faith." *Sutton v. State Farm Fire & Cas. Co.*, No. 2:17-CV-103, 2019 WL 2004133, at *2 (N.D. Ga. Feb. 26, 2019) (citing O.C.G.A. § 33-4-6 and *Cagle v. State Farm Fire & Cas. Co.*, 512 S.E.2d 717, 718–19 (Ga. Ct. App. 1999)). "Because damages for bad faith against an insurer 'are in the nature of a penalty, the statute is strictly construed and the right to such recovery must be clearly shown.'" *Id.* (quoting *Fla. Int'l Indem. Co. v. Osgood*, 503 S.E.2d 371, 375 (Ga. Ct. App. 1998)). The insured bears the burden of proving the insurer acted in bath faith. *See Allstate Ins. Co. v. Smith*, 597 S.E.2d 500, 502 (Ga. Ct. App. 2004). "A proper bad

14

faith demand can only be made at a time when the loss is payable under the terms and conditions of the policy." *Sutton*, 2019 WL 2004133, at *2 (citing *Dixie Constr. Prods. v. WMH, Inc.*, 347 S.E.2d 303, 304 (Ga. Ct. App. 1986)).   "A plaintiff's failure to properly satisfy the demand requirement is an absolute bar to recovery of a bad faith penalty and attorneys' fees under the statute." *S. Realty Mgmt., Inc. v. Aspen Specialty Ins. Co.*, No. 1:08-CV-0572, 2008 WL 4787511, at *2 (N.D. Ga. Oct. 27, 2008).

The purpose of the demand requirement in O.C.G.A. § 33-4-6 is to "notify the insurer that it is facing a bad faith claim for a specific refusal to pay so that it may decide whether to pay the claim." *Arrow Exterminators, Inc. v. Zurich Am. Ins. Co.*, 136 F. Supp. 2d 1340, 1356 (N.D. Ga. 2001) (internal citation omitted).   While there is no specific language an insured (or counsel) must use to satisfy the demand requirement "the language used must be sufficient to alert the insurer that a bad faith claim will be asserted if the specific loss noted is not paid." *Id.* To determine whether a demand is sufficient, "the court may look at whether the demand is merely a request to receive payment of the policy's proceeds as quickly as possible; whether the demand letter

mentions bad faith or refers to O.C.G.A. § 33-4-6; and whether the demand letter mentions litigation or a law suit." *S. Realty Mgmt.*, 2008 WL 4787511, at *2; *see Primerica Life Ins. Co. v. Humfleet*, 458 S.E.2d 908, 910 (Ga. Ct. App. 1995) (finding phone call two days after event demanding payment as quickly as possible to be insufficient); *Arrow*, 136 F. Supp. 2d at 1356–57 (finding demand letter insufficient because it did not mention "bad faith," cite the applicable statute, or request the insurer pay a specific loss); *but see Cotton States Mutual Ins. Co. v. Clark*, 151 S.E.2d 780, 786 (Ga. Ct. App. 1966) (finding the following conversation to be a sufficient demand: "The adjuster said, 'Well, we won't pay you anything' to which the plaintiff replied, 'Well, if you won't pay me I'll have to take you in court,' and the adjuster responded, 'I'll see you in court, Mr. Clark'").

The Butlers' November 30, 2020 letter to Defendant was quite polite and kind. Mr. Butler explained that one of Defendant's employees had been "kind and gracious" in working with them; explained the extent of the smoke and water damage, provided details about damage to the HVAC system, the loss of clothing and personal items; discussed concerns he had given his cancer treatment, and said it was his "suggestion . . .

that [Defendant] simply declare this a complete loss as to the structure and the contents." (Dkt. 17-1 at 2.) He said that he "just [does] not see how to restore [the home] to its previous condition and how to salvage the contents." (*Id.*) He then closed the letter saying, "thank you for considering all of the above as you guys make your respective decisions. Please, please, please, treat us fairly in the process." (*Id.*)

The Court is not saying a demand letter must be rude or accusatory. Of course not. But the language used must be sufficient to alert the insurer "that it is facing a bad faith claim for a specific refusal to pay so that it may decide whether to pay the claim." *Arrow*, 136 F. Supp. 2d at 1356. Mr. Butler's letter contains no reference to a claim for bad faith, does not cite the bad faith statute, does not suggest Plaintiff is anticipating litigation, does not demand any payment, and does not even express dissatisfaction with Defendants' conduct up to that point. Mr. Butler merely provides his view of the claim, asks Defendant to consider that view while assessing his claim, and asks for fairness in the process. Because Georgia law requires that the demand requirements be strictly construed and because the November 30, 2020 letter entirely fails to meet

the requirements, the Court concludes it cannot form the basis of a bad faith claim as a matter of law.

As explained, the Court is limited to considering the complaint allegations regarding the December 5, 2020 proof of loss.   The Butlers allege that, in the submission they stated, "We believe that the losses could exceed $1,000,000 – we are trying to salvage contents."  (Dkt. 1 ¶ 21.)  Mr. Butler also stated, "We have asked Lewis Reeves, a builder in the area for the past 44 [years] to help us with the loss relating to the structure. He may be asked to re-build our house." (*Id.* ¶ 22.)  Mr. Butler also provided "$1,000,000 (estimate)" as the "Amount Claimed."  (*Id.* ¶ 23.)  These communications are also insufficient "to alert the insurer that a bad faith claim will be asserted if the specific loss noted is not paid." *Arrow*, 136 F. Supp. 2d at 1356; *see also BayRock Mortg. Corp. v. Chicago Title Ins. Co.*, 648 S.E.2d 433, 435–36 (Ga. Ct. App. 2007) (finding that merely providing an insurer with notice of a claim and demanding payment did not satisfy § 33-4-6); *Humfleet*, 458 S.E.2d at 910 (holding

that insured's request to receive payment of policy proceeds as quickly as possible did not satisfy § 33-4-6).[2]

That leaves the April 30, 2021 letter the Butlers' counsel sent Defendant demanding full policy limits, bad faith damages, and attorneys' fees. (Dkts. 12-1; 1 ¶ 47.) The demand expired on its own

---

[2]Defendant also contends the November 30 and December 5 communications were not timely because the policy was not then immediately payable. (Dkt. 21 at 3, 8.) Defendant argues because November 30 and December 5 were only four and nine days after the fire, respectively, there is no way $1,000,000 was immediately due at the time of those communications. (*Id.*) "It has long been the law that in order to serve as a bad faith demand, the demand must be made at a time when immediate payment is due. An insured cannot legally demand immediate payment if the insurer has additional time left under the terms of the insurance policy in which to investigate or adjust the loss." *Stedman v. Cotton States Ins. Co.*, 562 S.E.2d 256, 259 (Ga. Ct. App. 2002). The complaint, however, fails to allege the policy's terms with respect to when immediate payment is due or whether, for example, Defendant was entitled to a certain time to complete its investigation and assessment. And the parties have not presented the policy to the Court. The Court thus cannot determine whether the November 30 and December 5 communications were untimely. *See State Farm Fire & Cas. Co. v. Thain*, 132 S.E.2d 148, 150 (Ga. Ct. App. 1963) ("While the policy here may, by its terms, specify a period of time following the filing of the proof before the loss is payable and hence before there is any right to make a demand, only the face of the policy is included in the record here and we must assume, in the absence of such a policy provision, that the loss is payable immediately after the proof of loss is made and filed, and thus that a demand could be made at any time thereafter.") But, regardless, their substance does not constitute a demand under § 33-4-6.

terms on May 7, 2021 and the Butlers filed suit claiming bad faith under the statute on May 21, 2021, only 21 days after making the demand. (Dkts. 12-1 at 2; 1.)  "[A]n individual may only seek bad faith penalties once 60 days have passed without an insurer paying a covered loss." *Brown v. Great N. Ins. Co.*, No. 2:14-CV-00015, 2015 WL 898357, at *8 (N.D. Ga. Mar. 3, 2015).   The April 30, 2021 letter was thus an insufficient demand.

Although neither party discusses the March 5, 2021 email attached to the Butlers' response brief, the Court will.  On that day, Mr. Butler responded to an email from Mr. Lindstrom stating, "Sorry, but I have [to] escalate this. I think you need to connect me with your legal counsel. I am not permitted to speak with you anymore given that we are headed to litigation now."  (Dkt. 17-3 at 1.)  In *Clark*, the only conversation between the plaintiff and the adjuster after he refused to sign the "non-waiver" agreement was when "the adjuster said, 'Well, we won't pay you anything' to which the plaintiff replied, 'Well, if you won't pay me I'll have to take you in court,' and the adjuster responded, 'I'll see you in court, Mr. Clark.'" 151 S.E.2d at 786.  The Georgia Court of Appeals found this conversation "wherein the insurer refused payment, amounted to a

demand, and took place more than sixty days before the action was filed."
*Id.*  "[A] verbal threat to resort to the courts after a claim [is] denied" is
considered a sufficient demand.  *See Harmon v. Allstate Prop. & Cas. Ins.
Co.*, No. 1:09-cv-2007, 2010 WL 11549908, at *6 n.5 (N.D. Ga. June 2,
2010).  While the Butlers' March 5, 2021 email appears to be a threat of
litigation, there is no allegation any claim was denied until April 14, 2021
at the earliest (but more likely April 30, 2021).  (*See* Dkt. 1 ¶¶ 41 (Mr.
Lindstrom told the Butlers he did not believe that the property needed to
be completely demolished and rebuilt); 49 (Mr. Lindstrom tendered what
Defendant considered to be the actual cash value of the property—
$483,734.46).)  The facts surrounding this communication are unclear,
and no party makes any reference to it.

Because it determines the November 20, 2020, December 5, 2020,
and April 30, 2021 communications are legally insufficient to give rise to
a bad faith claim under Georgia law, the Court grants Defendant's
motion to dismiss that claim.

### 3.   Negligence

The Butlers assert two negligence claims alleging Defendant and
its employees breached duties to timely process, investigate, adjust, keep

the Butlers informed of, and pay their claim.  (Dkt. 1 ¶¶ 71–82.)
Defendant moves to dismiss these claims contending improper claims
handling is not a tort claim upon which relief can be granted under
Georgia law.  (Dkt. 12 at 9.)  The Court agrees.

"[A] defendant's breach of a contract may give rise to a tort cause of
action only if the defendant has also breached an independent duty
created by statute or common law." *Javits v. State Farm Fire & Cas. Co.*,
No. 1:13-cv-487, 2014 WL 4230069, at *11 (N.D. Ga. Aug. 26, 2014).  That
is, "absent a legal duty beyond the contract, no action in tort may lie upon
an alleged breach of a contractual duty."  *Id.*  There must be an
"independent injury over and above the mere disappointment of
plaintiff's hope to receive his contracted-for benefit."  *Tate v. Aetna Cas.
& Sur. Co.*, 253 S.E.2d 775, 777 (Ga. Ct. App. 1979).

"Georgia law is clear that improper claims handling is a matter of
contract, not tort," because it almost never triggers a duty outside the
contract itself.  *Camacho v. Nationwide Mut. Ins. Co.*, 13 F. Supp. 3d
1343, 1363–64 (N.D. Ga. 2014).  That means an insurer does not trigger
an independent legal duty when it "fails to pay the plaintiff the full
amount of damages owed under the [insurance policy]," *Tate*, 253 S.E.2d

at 777, or when it otherwise botches "the manner in which [it] processe[s] [the plaintiffs'] claim for coverage" *Ali v. Travelers Home & Marine Ins. Co.*, No. 1:17-CV-03192, 2019 WL 2083541, at \*4–5 & n.6 (N.D. Ga. Feb. 8, 2019).  If a claim is even "related" to this kind of insurance processing, it generally sounds in contract—not tort—because no extra-contractual duty applies.  *See Aldridge v. Travelers Home and Marine Ins. Co.*, No. 1:16-CV-1247, 2016 WL 10567690, at \*3 (N.D. Ga. Nov. 30, 2016); *see also Camacho*, 13 F. Supp. 3d at 1364 ("[N]o independent duty to handle [insurance] claims with care exists in tort under Georgia law.").

The Butlers claim Defendant and its employees and agents "had a duty to timely and appropriately adjust and pay [the Butlers'] claim," and this duty "included keeping [the Butlers] informed about the status of their claim, requesting any additional information it needed, inspecting and testing the property to determine the extent and nature of the loss, and ultimately timely paying the claim."  (Dkt. 1 ¶¶ 72, 79.)  The Butlers allege Defendant and its employees and agents breached their duties by "failing to process [the Butlers'] claims in a timely manner, failing to pay for [the Butlers'] loss as covered by the Policy, failing to keep [the Butlers] apprised of developments, and failing to investigate and adjust the

claim." (*Id.* ¶¶ 73, 80.) These allegations concern "the manner in which Defendant processed [the Butlers'] claim for coverage," *Ali*, 2019 WL 2083541, at *4, or Defendant's "fail[ure] to pay the plaintiff the full amount of damages owed under the [insurance policy]." *Tate*, 253 S.E.2d at 777. That means Defendant's "alleged duty to [the Butlers] arises, if at all, under the Policy and thus can only support a claim for breach of contract." *Armstead v. Allstate Prop. & Cas. Ins. Co.*, No. 1:14-cv-586, 2014 WL 6810727, at *10 (N.D. Ga. Dec. 3, 2014); *see Tate*, 253 S.E.2d at 776–77 (where insured claimed insurer used "incompetent adjuster," "commit[ed] an unfair business practice," "fail[ed] to use due care to include all of plaintiff's losses," "fail[ed] to properly inspect plaintiff's losses and property," and "fail[ed] to consider plaintiff's estimates of his loss," there was an "absence of any statutory duty owed to the plaintiff" and "[i]f the duties in question arose at all, they arose out of the contract").

To be sure, "the existence of a confidential relationship can create independent duties, the breach of which may constitute a tort." *Prime Mgmt. Consulting & Inv. Servs., LLC v. Certain Underwriters at Lloyd's London*, No. 1:07-cv-1578, 2007 WL 4592099, at *5 (N.D. Ga. Dec. 28,

2007).  But "Georgia law is clear that generally there is no confidential relationship between an insured and an insurer."  *Yai v. Progressive Bayside Ins. Co.*, No. 1:08-CV-1369, 2009 WL 383362, at *8 (N.D. Ga. Feb. 12, 2009); *see Willis v. Allstate Ins. Co.*, 740 S.E.2d 413, 417 (Ga. Ct. App. 2013) ("Generally, no fiduciary relationship exists between an insured and his or her insurer.").  "The relationship between the two parties is governed instead by the insurance agreement."  *Prime Mgmt.*, 2007 WL 4592099, at *5.  "Nothing alleged by [the Butlers] in [their] original complaint . . . even suggests that the relationship between the [the Butlers] and Defendant is anything more than contractual." *Garrett v. Unum Life Ins. Co. of Am.*, 427 F. Supp. 2d 1158, 1162 (M.D. Ga. 2005); *see Aldridge*, 2016 WL 10567690, at *3 ("[W]hen . . . a dispute arises as to whether the insurer is obligated to pay a claim . . . [,] [t]here is no special relationship between the parties . . . , only a contractual one.").  And the Court sees no basis for reading in any such relationship into the contract.  The Court thus grants Defendant's motion to dismiss the Butlers' negligence claims.

### 4.    Punitive Damages and Attorneys' Fees

The Butlers assert claims for punitive damages and attorneys' fees. (Dkt. 1 ¶¶ 87–93.)  Defendant moves to dismiss these claims contending O.C.G.A. § 33-4-6 is the exclusive extra-contractual remedy against it. (Dkt. 12 at 10–14.)  The Court agrees.

The Butlers assert their punitive damages claim under O.C.G.A. § 51-12-5.1.  (Dkt. 1 ¶¶ 87–91.)  But O.C.G.A. § 33-4-6 displaces claims for punitive damages based on an insurer's bad faith failure to pay a claim.  *See Great Sw. Exp. Co. v. Great Am. Ins. Co. of N.Y.*, 665 S.E.2d 878, 881 (Ga. Ct. App. 2008) (affirming summary judgment on punitive damages counterclaim because O.C.G.A. § 33-4-6 provides the exclusive remedy for an insurer's bad faith refusal to pay insurance proceeds); *Armstead*, 2014 WL 6810727, at *11 ("Section 33-4-6 is the exclusive remedy for an insurer's bad faith . . . and thus punitive damages . . . are not available under any other Georgia statute.").  The Butlers' punitive damages claim must thus be dismissed.[3]

---

[3] It is also "well settled in Georgia that punitive damages are not allowed in contract claims and that a plaintiff must allege a tort claim in order to recover punitive damages." *Headrick v. State Farm Fire & Cas. Ins. Co.*, No. 4:08-CV-0004, 2008 WL 11322195, at *2 (N.D. Ga. Mar. 28, 2008); *see*

The Butlers also assert a claim for attorneys' fees under O.C.G.A. § 13-6-11 on the grounds Defendant acted in bad faith, has been stubbornly litigious, and has caused the Butlers unnecessary trouble and expense. (Dkt. 1 ¶ 93.)  But a "claim for attorneys' fees and litigation expenses under O.C.G.A. § 13-6-11 [is] barred by O.C.G.A. § 33-4-6, which provides insureds the exclusive procedure to recover attorneys' fees."  *Powers v. Unum Corp.*, 181 F. App'x 939, 944 n.8 (11th Cir. 2006); *see Thompson v. Homesite Ins. Co. of Ga.*, 812 S.E.2d 541, 546 (Ga. Ct. App. 2018) ("Even where the insured alleges other theories of recovery distinct from a bad faith claim, absent a special relationship beyond that of insured and insurer, if such claims are predicated on the insurer's failure to pay a claim, O.C.G.A. § 33-4-6 is the exclusive vehicle through which the insured may make a claim for attorney fees against the insurer."); *Balboa Life and Cas., LLC v. Home Builders Fin., Inc.*, 697 S.E.2d 240, 245 (Ga. Ct. App. 2010) ("[C]laim for expenses of litigation, including attorney fees, under OCGA § 13-6-11 was not authorized because the penalties

---

*Javits*, 2014 WL 4230069, at *14 ("Under Georgia law, punitive damages cannot be awarded for breach of contract.").  "[B]ecause [the Butlers'] tort claims have been dismissed, [their] claim for punitive damages, under O.C.G.A. § 51-12-5.1, must also be dismissed."  *Garrett*, 427 F. Supp. 2d at 1163.

27

contained in OCGA § 33-4-6 are the exclusive remedies for an insurer's bad faith refusal to pay insurance proceeds." (internal quotation marks omitted)); *Javits*, 2014 WL 4230069, at *12 n.14 ("[R]ecovery for failure to timely pay a claim and for attorney's fees and costs is limited to a claim under O.C.G.A. § 33-4-6."); *Trade AM Int'l, Inc. v. Cincinnati Ins. Co.*, No. 1:08-CV-3711, 2012 WL 1865406, at *4 (N.D. Ga. Jan. 18, 2012) ("[W]here an insured brings suit against its insurer for breach of an insurance contract based upon failure to pay and seeks to recover attorneys' fees and expenses for bad faith, the exclusive remedy to the insured is under § 33-4-6.  Recovery under the general provisions of § 13-6-11 will not be allowed.").

The Butlers, relying on *American Family Life Assurance Co. of Columbus v. U.S. Fire Co.*, 885 F.2d 826, 834 n.3 (11th Cir. 1989), assert that O.C.G.A. § 33-4-6 is not the exclusive extra-contractual remedy. (Dkt. 17 at 10.)  But the comments made by the Eleventh Circuit in that case and relied upon by the Butlers "was dicta in a footnote that misconstrued the Georgia law applicable to the instant case." *Trade AM Int'l*, 2012 WL 1865406, at *5.

> [A] consistent line of authority leading from the Supreme
> Court of Georgia in *McCall* in 1984 to the present confirms

> that, in an action such as this one, brought to recover for
> breach of a first-party insurance contract and alleging failure
> to pay a claim of loss, recovery of attorney's fees and expenses
> must be had under O.C.G.A. § 33-4-6, if at all, and a claim for
> attorneys' fees and expenses under O.C.G.A. § 13-6-11 is not
> authorized.

*Id.* Post-*American Family* Georgia precedent makes it clear that a "claim for attorney fees and expenses of litigation under OCGA § 13-6-11 is not authorized. The penalties contained in OCGA § 33-4-6 are the exclusive remedies for an insurer's bad faith refusal to pay insurance proceeds." *Howell v. S. Heritage Ins. Co.*, 448 S.E.2d 275, 276 (Ga. Ct. App. 1994). "Sitting as an *Erie* court, this Court must follow that [Georgia] precedent and disregard *American Family*." *Colonial Oil Indus. v. Underwriters*, 910 F. Supp. 655, 656 (S.D. Ga. 1995). It is also noteworthy that the Eleventh Circuit (albeit in an unpublished decision) observed as follows: "Georgia courts have explicitly stated that in cases where a plaintiff alleges that an insurer engaged in bad faith by refusing to pay a claim, an action 'for attorney fees and expenses of litigation under OCGA § 13-6-11 is not authorized.'" *Johnston v. Companion Prop. & Cas. Ins. Co.*, 318 F. App'x 861, 868 (11th Cir. 2009) (quoting *Howell*, 448 S.E.2d at 276). The Court thus grants Defendant's motion to dismiss the Butlers' claims for punitive damages and attorneys' fees.

29

### 5.     Request to Amend and Motion to Amend

In the conclusion of the Butlers' response brief, they request leave to amend the complaint.  (Dkt. 17 at 10.)  While Defendant's motion to dismiss was pending, the Butlers also filed a motion to amend and an amended complaint which adds "more facts showing [Defendant's] bad faith" and omits the jury demand.  (Dkts. 22 at 1; 22-1.)[4]  Federal Rule of Civil Procedure 15 provides that a party may amend its pleading once within either twenty-one days after serving it or twenty-one days after service of a required responsive pleading or motion filed under Rule 12(b), (e), or (f), whichever is earlier.  Fed. R. Civ. P. 15(a)(1).  Outside this timeframe, a party may amend its pleading only with the opposing parties' written consent or leave of the court, which a court "should freely give . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "The thrust of Rule 15(a) is to allow parties to have their claims heard on the merits, and accordingly, district courts should liberally grant leave to amend

---

[4] The Local Rules require "[e]very motion presented to the clerk for filing . . . be accompanied by a memorandum of law which cites supporting authority."  LR 7.1(A)(1), NDGa.  The Butlers' motion to amend is not accompanied by a memorandum of law and only generally references and quotes the applicable federal rule.  The Court admonishes the Butlers for violating the Local Rule.  It is clear and should be followed.

when 'the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief.'" *In re Engle Cases*, 767 F.3d 1082, 1108 (11th Cir. 2014) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  In determining whether to grant leave to amend a complaint, a court "should consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Seiger ex rel. Seiger v. Philipp*, 735 F. App'x 635, 637 (11th Cir. 2018) (internal quotation marks omitted).

The Court finds that any amendment to the Butlers' negligence, punitive damages, and attorneys' fees claims would be futile.  *See Alhallaq v. Radha Soami Trading, LLC*, 484 F. App'x 293, 298 (11th Cir. 2012) ("[J]ustice does not require district courts to waste their time on hopeless cases.").  But the Court grants the Butlers' request as to their bad faith claim in one regard.[5]  The Court has grave doubts that the

---

[5] The Butlers contend the amended complaint they filed adds facts showing Defendant's bad faith, but the Court disagrees as none of the new facts address the inadequate "demands."  The Court notes Plaintiff also argues the bad faith statute does not require a "pre-suit" demand.

March 5, 2021 email is a sufficient demand, but maybe it gives the Butlers a slim chance. *See S. Realty Mgmt.*, 2008 WL 4787511, at *2 ("[T]he mere specter of a lawsuit at a time when immediate payment is due appears to be enough to constitute a sufficient demand under O.C.G.A. § 33-4-6."). No one really discussed it. To the extent the Butlers believe that email may serve as the basis for a bad faith claim, they may amend their complaint to assert such a claim. But that is all. The Court thus grants the Butlers' request and motion in this limited manner.

## III. Conclusion

The Court **GRANTS** Defendant's Motion to Dismiss. (Dkt. 12.) The Court will allow the Butlers an opportunity to amend their complaint in accordance with this Order, specifically and exclusively to assert appropriate bad faith allegations arising from the March 5, 2021 email.

---

(Dkt. 24 at 1.) But Georgia case law clearly interprets O.C.G.A. § 33-4-6 as requiring a pre-suit demand. *See Cagle*, 512 S.E.2d at 718 ("It is well-settled that, in order to assert a claim under OCGA § 33-4-6, the demand for payment be made at least 60 days before suit is filed." (citing *Guarantee Reserve Life Ins. Co. v. Norris*, 134 S.E.2d 774, 775 (Ga. 1964)); *Blue Cross & Blue Shield of Georgia/Atlanta, Inc. v. Merrell*, 316 S.E.2d 548, 548–49 (Ga. Ct. App. 1984) ("[A] failure to wait at least 60 days between making demand and filing suit constitutes an absolute bar to recovery of a bad-faith penalty and attorney fees under [O.C.G.A. § 33-4-6].")

The Court **ORDERS** the Butlers to file an amended complaint no later than thirty (30) days from the date of this Order.

The Court **GRANTS IN PART** and **DENIES IN PART** the Butlers' Motion for Leave to File Amended Complaint.  (Dkt. 22.)

**SO ORDERED** this 8th day of March, 2022.

_____

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE